[Cite as *State v. Alvelo*, 2017-Ohio-742.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 104422**

# STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

# ERNESTO J. ALVELO

DEFENDANT-APPELLANT

**JUDGMENT:**
AFFIRMED IN PART; VACATED IN PART;
REMANDED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-15-599547-A

**BEFORE:** E.A. Gallagher, P.J., Stewart, J., and Blackmon, J.

**RELEASED AND JOURNALIZED:** March 2, 2017

**ATTORNEY FOR APPELLANT**

John F. Corrigan
19885 Detroit Road, #335
Rocky River, OH 44116


**ATTORNEYS FOR APPELLEE**

Michael C. O'Malley
Cuyahoga County Prosecutor
BY: John F. Hirschauer
Assistant Prosecuting Attorney
The Justice Center, 9th Floor
1200 Ontario Street
Cleveland, Ohio 44113

EILEEN A. GALLAGHER, P.J.:

**{¶1}** Defendant-appellant Ernesto Alvelo appeals his convictions, arguing that the trial court erred in accepting his guilty pleas. Alvelo contends that his guilty pleas should be vacated because they were "mixed with protestations of innocence" and, therefore, involuntary and because the trial court allegedly took "a vested interest" in the plea "by counseling" Alvelo that "he did not have a defense." For the reasons that follow, we affirm Alvelo's convictions. We find, however, that the trial court erred (1) in imposing sentences on counts of breaking and entering and having weapons while under disability in its sentencing journal entry that it did not orally impose at the sentencing hearing and (2) in ordering a different amount of restitution in its sentencing journal entry than it imposed at the sentencing hearing. Accordingly, we remand the matter for resentencing on the breaking and entering and having weapons while under disability counts and for entry of a nunc pro tunc order to correct the amount of restitution stated in the sentencing journal entry to that imposed at the sentencing hearing.

**Factual and Procedural Background**

**{¶2}** On June 25, 2015, a Cuyahoga County Grand Jury indicted Alvelo on six counts — one count of aggravated robbery, one count of theft, one count of kidnapping, one count of breaking and entering and two counts of having weapons while under disability. With the exception of the having weapons while under disability counts, all of the counts included one-year and three-year firearm specifications.

{¶3} The charges arose out of a September 8, 2015 incident in which Alvelo and another unidentified male allegedly robbed 80 year-old Stephen Lazor while he was working in the garage of one of his investment properties in Tremont area of Cleveland. The two men entered the garage and demanded that Lazor turn over any money he had. Alvelo's accomplice allegedly brandished a handgun and Alvelo allegedly told him to shoot Lazor if Lazor did not comply. In response to their threats, Lazor gave the men $294 in cash and they took his cell phone and fled the scene. Surveillance video from the garage showed Alvelo entering and leaving the garage. Still shots of the surveillance video were provided to the media and Alvelo was arrested after an anonymous tip identified him as one of the perpetrators.

{¶4} On December 1, 2015, Alvelo and the state reached a "package [plea] deal." Pursuant to the plea agreement, Alvelo agreed to plead guilty to one of the counts of having weapons while under disability and three other amended counts — i.e., the aggravated robbery charge was reduced to robbery (a second-degree felony instead of a first-degree felony) with a one-year firearm specification and the firearm specifications were deleted from the theft and breaking and entering counts. Alvelo also agreed to plead guilty to one count of drug possession in an unrelated case (Case No.CR-15-597223), to pay $394 in restitution to the victim,[1] to have no contact with the victim and to cooperate with the authorities in their efforts to identify, locate and

---

[1] The agreed restitution of $394 included restitution for the cell phone and $294 in cash that was taken.

prosecute his accomplice.  In exchange for his guilty pleas, the remaining counts and firearm specifications were nolled.  Defense counsel confirmed that a factual basis existed for Alvelo's guilty pleas.  After reviewing the terms of the plea agreement with the parties, the trial judge proceeded with the plea colloquy.

{¶5} The trial judge asked Alvelo several preliminary questions then inquired whether he understood "what is happening here today."  Alvelo replied: "Pretty much, yeah, pretty much so."  Apparently sensing some hesitation by Alvelo, the trial court probed his understanding of the proceedings and explained in detail what would be occurring:

> THE COURT: You seem to hesitate a little bit.  You said pretty much.  Is there something you're not clear on or not following?
>
> THE DEFENDANT: No, not really.   I comprehend.
>
> THE COURT:   So, why the hesitation?   Talk to me about it. Let me say I understand that you're expected to plead to some heavy duty charges here which is going to entail some prison.  And, if there is some, I won't say reluctance or some issues regarding that, I understand that.  And so, I'm not trying to, I guess what I'm trying to say, I know this isn't something you want to do, something you're not looking forward to doing.  And, if it's along those lines, then I can deal with that.  But, I'm trying to make sure that all your questions have been answered.  We're going to go over all your rights here.  So you understand, you have certain rights.  You understand that by your entering into this plea, you'll be giving up those rights.  We're going to go through all these charges.  I'm going to advise what your penalties are and advise you what your maximum exposure may be and what your  worst case scenario, how much prison time you're looking at.  I'm going to talk about those things.  If there is anything else other than these things, you got to let me know.  If you're not clear, somebody told you one thing, whatever it may be, those are issues we have to talk about on the record.   Fair enough?
>
> THE DEFENDANT: Yes, sir.

**{¶6}** Upon further inquiry by the trial court, Alvelo indicated that he did not realize, during his discussions with counsel regarding the plea agreement, that he would be "pleading guilty to all them counts."

**{¶7}** The trial judge explained that the plea agreement involved charges in two cases — this case and a "pretty straightforward" unrelated drug possession case. He further explained the amendments that would be made to the charges as part of the plea agreement, e.g., amending Count 1 from aggravated robbery to robbery and deleting the three-year firearm specification, and the impact of those changes, i.e., "shav[ing] off a minimum of three years from your potential sentence." He also explained what it meant for two charges to be allied offenses, identified the charges to which Alvelo would be pleading guilty that would be considered allied offenses and explained the impact a determination that two offenses were allied offenses would have on his potential sentence, i.e., "there is not going to be a separate penalty or sentence for that." Alvelo indicated that the trial judge's explanation was helpful and that he had no questions at that time. The trial judge told Alvelo that if he had any questions at any other point in the proceedings or if there was anything he wished to discuss with counsel privately to let him know because "I want to make sure that happens." Alvelo agreed that he would do so.

**{¶8}** The trial judge then continued with the plea colloquy. Alvelo confirmed that no threats or promises had been made to induce him to change his pleas other than what had been stated on the record and that it was his decision to plead guilty to the charges as

negotiated. With respect to the representation provided by defense counsel, Alvelo stated that he was "very" satisfied with the representation he had received and that defense counsel had "[d]one her job." The trial judge advised Alvelo of his constitutional rights and confirmed that he understood the rights he would be waiving by entering guilty pleas. He also confirmed that Alvelo understood that the trial court, upon acceptance of his guilty pleas, could immediately proceed with judgment and sentencing. The trial court went through each of the counts to which Alvelo would be pleading guilty, outlined the penalties he faced on each count, including the maximum prison sentence for each offense and confirmed that Alvelo understood each count and its potential penalties.

{¶9} After discussing all of the charges, the trial judge once again inquired of Alvelo as to whether he had any questions. Alvelo indicated that he had no questions and again confirmed that he understood the charges to which he would be pleading guilty, the rights he would be giving up and the possible penalties he would face as a result of his guilty pleas:

> THE COURT: Do you have any questions of me about anything that we talked about here today or anything else?
>
> THE DEFENDANT: No.
>
> THE COURT: All right. You feel you have a complete understanding of all the rights that you're giving up, all the possible penalties that you're facing and all the charges that you're expecting to plead guilty to?
>
> THE DEFENDANT: Yes.
>
> THE COURT: All right. Again, any questions at all?
>
> THE DEFENDANT: No.

THE COURT: All right. Let the record reflect that the plea you're about to tender will be made knowingly, voluntarily and intelligently. I am further going to find I have explained all your rights to you and that you understand the nature of the charges, the effect of a plea and the maximum penalties which I may impose.

{¶10} Alvelo thereafter entered his guilty pleas and the trial court accepted those pleas, made findings of guilt and granted the state's motion to dismiss the remaining counts and specifications. At no point prior to the entry of his guilty pleas or the trial court's acceptance of his guilty pleas did Alvelo claim that he was innocent of any of the charges to which he pled guilty.

{¶11} The trial court referred the case for preparation of a presentence investigation report ("PSI") and scheduled a sentencing hearing. The trial judge then asked Alvelo whether he had ever been through the PSI "process" before. Alvelo explained that he had but that it was "many years ago." The trial court explained the process to him then asked him about his criminal history and what had led to the incident giving rise to this case:

THE COURT: What was going on in this case here?

THE DEFENDANT: In this case?

THE COURT: It's been a while since you've been in trial?

THE DEFENDANT: Yes, sir. I stuck my hand in the wrong cookie jar, sir, believe me. I'm a heroin addict. Friend of mine came by, asked me to collect money for him. I went to collect money for him. He said he couldn't go in; there should be no problems.

THE COURT: How long have you been doing heroin?

THE DEFENDANT: Years. * * *

But, thing is, when I went in there to get this money, it was basically over some girls, females. My buddy, the guy, I felt bad, little guy, a little old man, my buddy said it was girls and an older man. And, I just collected the money and left. I didn't, I felt bad. I'm just supporting my habit, Your Honor. That's what I do. I'm sorry. Referring to stuck my hand in the cookie jar, I shouldn't have.

{¶12} On December 22, 2015, the trial court conducted a sentencing hearing. Before imposing sentence, the trial court heard from defense counsel, the state, the victim and Alvelo. Defense counsel argued, based on the fact that there was no harm to the victim and that Alvelo was not the person who possessed the firearm, Alvelo's heroin addiction and health issues and the fact that Alvelo took responsibility for his actions by entering a guilty plea, "knowing that he must go to prison for the firearm specification," that the minimum sentence should be imposed.

{¶13} The prosecutor and victim also addressed the court. The prosecutor described the incident, Alvelo's role in the incident, the extent of his cooperation with the authorities and his criminal history. The victim also described what had happened and requested that Alvelo receive "the maximum penalty."

{¶14} When Alvelo addressed the trial court, he first apologized to the victim, then disputed that the incident was an armed robbery, asserting that he believed he was simply collecting a debt:

THE DEFENDANT: Sir, I extremely apologize to the gentleman. As far as my — my knowledge, it was a debt that he owed in order for some prostitutions — prostitution were going on. That's the only thing that I know. It was not a robbery, sir. And there was not a gun — there's no way he saw a gun because neither one of us had one. And from my understanding, sir, it was a collection. It was not a robbery. He's had problems in the past with prostitutions and everything else. The guys that I was involved with, sir, I don't know anything else about them besides their names. That's all I know. I gave the detective everything possible.

{¶15} The trial court explored Alvelo's claim that he was simply a debt collector:

THE COURT: Did you want to see these pictures [the still shots from the surveillance video] one last time?

THE DEFENDANT: No, sir. I've seen them.

THE COURT: Okay. That's your story; you're sticking with it?

THE DEFENDANT: Yes, sir.

THE COURT: All right then. Anything else that you'd like me to know?

THE DEFENDANT: I apologize to everyone. I mean, this is not what I do. I mean, I'm not a robber. I never been in trouble for robbery in my life. * * *

THE COURT: You're not a robber; you're just a debt collector? Is —

THE DEFENDANT: Yeah. The guy was — the guy said he was going to give me a bag of heroin if I helped him collect his money. That was it. That was all I made out of the deal. I didn't make any money.

THE COURT: So, just out of curiosity, what in your mind is the difference between robbing someone and collecting a debt?

THE DEFENDANT: Well, I don't know. I don't think there is a difference, sir.

THE COURT: Right. * * *

{¶16} The robbery and theft counts merged for sentencing and the state elected to proceed to sentencing on the robbery count. The trial court sentenced Alvelo to an aggregate prison term of seven years — one year on the firearm specification, to run prior to and consecutive to a six-year sentence on the underlying robbery charge.[2] The trial court further ordered that the seven-year sentence in this case was to run consecutive to a 12-month sentence imposed in Case No. 597223. The trial court also ordered payment of court costs and restitution[3] and imposed three years of mandatory postrelease control.

{¶17} On May 3, 2016, Alvelo filed, pro se, a notice of appeal of his convictions, a motion for leave to file a delayed appeal and a motion to withdraw his guilty pleas pursuant to Crim.R. 32.1. On May 12, 2016, this court granted Alvelo's motion for leave

---

[2]The trial court did not orally impose a sentence on the breaking and entering and having weapons while under disability charges at the sentencing hearing. However, in its December 22, 2015 sentencing journal entry, the trial court imposed prison sentences of 12 months and 36 months, respectively, on those charges, to run concurrent to each other and concurrent to the seven-year sentence on the robbery count.

[3]Although the transcript from the sentencing hearing reflects that the trial court orally ordered restitution of $394 at the sentencing hearing, in its December 22, 2015 sentencing journal entry, the trial court imposed restitution of $395.

to file a delayed appeal and appointed appellate counsel. On June 28, 2016, the trial court summarily denied his motion to withdraw his guilty pleas.

**{¶18}** Alvelo has raised the following two assignments of error for review:

ASSIGNMENT OF ERROR I:
The trial court erred in retaining a guilty plea amidst protestations of innocence and by taking a vested interest in retaining the plea by counseling appellant that his potential defense was meritless.

ASSIGNMENT OF ERROR II:
The trial court erred in denying appellant's motion to withdraw his guilty plea.

**Law and Analysis**

**The Trial Court's Acceptance and Retention of Alvelo's Guilty Pleas**

**{¶19}** In his first assignment of error, Alvelo asserts that his guilty pleas were involuntary and that, due to the "protestations of innocence" that Alvelo contends were "mixed" with his guilty pleas, the trial court erred in accepting and "keeping" his guilty pleas.

**{¶20}** "When a defendant enters a plea in a criminal case, the plea must be made knowingly, intelligently, and voluntarily. Failure on any of those points renders enforcement of the plea unconstitutional under both the United States Constitution and the Ohio Constitution." *State v. Engle*, 74 Ohio St.3d 525, 527, 660 N.E.2d 450 (1996); *see also State v. Veney*, 120 Ohio St.3d 176, 2008-Ohio-5200, 897 N.E.2d 621, ¶ 7. Crim.R. 11(C)(2) outlines the constitutional and procedural safeguards the trial court must follow when accepting a guilty plea in a felony case. It provides:

In felony cases the court * * * shall not accept a plea of guilty * * * without first addressing the defendant personally and doing all of the following:

> (a) Determining that the defendant is making the plea voluntarily, with understanding of the nature of the charges and of the maximum penalty involved, and, if applicable, that the defendant is not eligible for probation or for the imposition of community control sanctions at the sentencing hearing.

> (b) Informing the defendant of and determining that the defendant understands the effect of the plea of guilty or no contest, and that the court, upon acceptance of the plea, may proceed with judgment and sentence.

> (c) Informing the defendant and determining that the defendant understands that by the plea the defendant is waiving the rights to jury trial, to confront witnesses against him or her, to have compulsory process for obtaining witnesses in the defendant's favor, and to require the state to prove the defendant's guilt beyond a reasonable doubt at a trial at which the defendant cannot be compelled to testify against himself or herself.

{¶21} In considering whether a plea was entered knowingly, intelligently and voluntarily, "an appellate court examines the totality of the circumstances through a de novo review of the record." *State v. Spock,* 8th Dist. Cuyahoga No. 99950, 2014-Ohio-606, ¶ 7; *see also State v. Jackson*, 8th Dist. Cuyahoga No. 99985, 2014-Ohio-706, ¶ 6. Where a defendant enters a guilty plea without asserting innocence, it is presumed that the defendant understands that he or she has admitted his or her guilt.

*State v. Griggs*, 103 Ohio St.3d 85, 2004-Ohio-4415, 814 N.E.2d 51, ¶ 19; *State v. Reeves*, 8th Dist. Cuyahoga No. 100560, 2014-Ohio-3497, ¶ 12.

**{¶22}** Alvelo concedes that "the [trial] court accepted [his] guilty plea[s] in compliance with Criminal Rule 11." However, he contends that based on statements he made after the trial court accepted his guilty pleas — i.e., his assertions at the conclusion of the plea hearing and at the sentencing hearing that he was just "collecting a debt" and that "a firearm was not involved" in the incident — "an *Alford* situation was at hand," such that the trial court erred in retaining Alvelo's guilty pleas without "going through the process described in *North Carolina v. Alford*" and conducting an inquiry into the "factual framework to measure [his] claim of innocence against the willingness to waive trial." Although the trial court had already found that Alvelo's guilty pleas were made knowingly, voluntarily and intelligently, Alvelo contends that at "the moment when [Alvelo] stated that he thought he was collecting a debt," "further inquiry was necessary to determine whether the guilty plea was knowingly, voluntarily, and intelligently entered." We disagree.

**{¶23}** An *Alford* plea exists where a defendant enters a guilty plea contemporaneously with a "protestation of innocence." *Alford v. North Carolina,* 400 U.S. 25, 37-38, 91 S.Ct. 160, 27 L.E.3d 162 (1970); *State v. Clemm*, 8th Dist. Cuyahoga No. 101291, 2015-Ohio-594, ¶ 26; *see also State v. Wilkerson*, 8th Dist. Cuyahoga No. 100865, 2014-Ohio-3919, ¶ 17 ("An *Alford* plea results when a defendant pleads guilty yet maintains actual innocence of the crime charged."). Where a defendant enters an

*Alford* plea, the trial court must inquire into the factual basis surrounding the charges to determine whether the defendant is making an intelligent and voluntary guilty plea. *See, e.g., State v. Corbett*, 8th Dist. Cuyahoga No. 99649, 2013-Ohio-4478, ¶ 6. The trial court may accept the guilty plea only if a factual basis for the guilty plea is evidenced by the record. *See, e.g., id.* ("'When taking an *Alford* plea, the trial court cannot determine whether the accused was making an intelligent and voluntary guilty plea absent some basic facts surrounding the charge' demonstrating that the plea cannot seriously be questioned."), quoting *State v. Jones*, 8th Dist. Cuyahoga No. 97674, 2012-Ohio-2512, ¶ 5; *State v. Johnson*, 8th Dist. Cuyahoga No. 103408, 2016-Ohio-2840, ¶ 27 ("An *Alford* plea may not be accepted when the record fails to demonstrate facts upon which the trial court can resolve the apparent conflict between a defendant's claim of innocence and the defendant's desire to plead guilty to the charges."), citing *State v. Tyner*, 8th Dist. Cuyahoga No. 97403, 2012-Ohio-2770, ¶ 6.

**{¶24}** Alvelo's plea was not, however, an *Alford* plea. First, Alvelo's assertions that he was merely collecting a debt and that no firearm was involved in the incident do not constitute "protestations of innocence" under *Alford*. "'Implicit in any *Alford* plea is the requirement a defendant *actually state his innocence* on the record when entering a guilty plea.'" (Emphasis added.) *Johnson* at ¶ 27, quoting *State v. Murphy*, 8th Dist. Cuyahoga No. 68129, 1995 Ohio App. LEXIS 3924, *7 (Aug. 31, 1995); *see also Wilkerson* at ¶ 17-22 (rejecting defendant's claim that he entered an *Alford* plea where defendant did not assert or maintain actual innocence at the plea hearing when the trial

court reviewed the nature of the charged offenses and possible penalties with him, stated he understood that he would be admitting the charged offenses by pleading guilty and never attempted to withdraw his guilty pleas before the trial court imposed sentence). At no point did Alvelo assert or maintain his actual innocence of any of the charges to which he pled guilty. Further, prior to the entry of his guilty pleas, Alvelo stated that it was his decision to plead guilty.

{¶25} Second, even if Alvelo's assertions that he was merely collecting a debt and that no firearm was involved in the incident constituted "protestations of innocence" under *Alford*, such assertions were not contemporaneous with the entry of his guilty pleas. For a plea to constitute an *Alford* plea, the defendant "must enter a guilty plea and *at the same time protest* innocence." (Emphasis added.) *Johnson* at ¶ 27-28 (where defendant did not claim he was innocent of charges during plea colloquy, stated he was pleading guilty "on his own choice," never attempted to withdraw his plea and first claimed innocence during his PSI interview, trial court had no duty to inquire into his reasons for pleading guilty under *Alford*). "'It is well settled, * * * that *North Carolina v. Alford* will not apply if the protestation of innocence is made after and not contemporaneously with the guilty plea.'" *Corbett* at ¶ 7, quoting *State v. Cutlip*, 8th Dist. Cuyahoga No. 72419, 1998 Ohio App. LEXIS 2899, *4 (June 18, 1998); *see also Reeves*, 2014-Ohio-3497, at ¶ 13, fn. 1 ("*Alford* does not apply * * * where claims of innocence are made after the plea.").

**{¶26}** Alvelo disputes this proposition and claims, based on this court's decision in *State v. Jones*, 8th Dist. Cuyahoga No. 97674, 2012-Ohio-2512, that "the exact timing" of a defendant's "protestations of innocence" is "irrelevant." The facts of *Jones*, however, are very different from those of this case. In *Jones*, the defendant appealed from the trial court's denial of his presentence motion to vacate his plea. *Id.* at ¶ 1. Unlike in this case, the defendant in *Jones* explicitly questioned his guilt immediately after he entered his guilty plea and before the trial court accepted his plea, as follows:

> Court: How do you plead, guilty or not guilty?
>
> Defendant: Guilty, your Honor.
>
> Court: And are you, in fact, guilty, sir?
>
> Defendant: I feel — I feel I'm not, but — honestly I feel like I'm not, but I'm just — I'm scared.
>
> Court: Is your plea consistent with the evidence?
>
> Defendant: I really don't know the evidence, your Honor. I see a lot — how can I say it? I have heard a lot of lies and statements and stuff.
>
> Court: But is your plea consistent with the evidence?
>
> Defendant: Some of it.
>
> Court: The court accepts your plea.

*Id*. at ¶ 2. Also, unlike in this case, the defendant in *Jones* filed a motion to withdraw his guilty plea prior to sentencing "in light of the fact that he had stated innocence at the plea hearing." *Id*. at ¶ 3. This court held that because the defendant stated his innocence at the plea hearing and because the trial court thereafter accepted his plea "without a factual

framework to measure his innocence against the willingness to waive trial," his guilty plea was not made knowingly, voluntarily or intelligently and the trial court abused its discretion in denying the defendant's presentence motion to withdraw his plea. *Id*. at ¶ 6, 8.

**{¶27}** In this case, Alvelo did not claim he was only collecting a debt or was otherwise innocent of the charges at issue at any point during the plea colloquy or before the trial court accepted his guilty pleas. It was only at the conclusion of the plea hearing, after the trial court had explained the PSI process and the use of the PSI in sentencing that it posed a question to Alvelo and Alvelo asserted that he was simply "collect[ing] money" for a friend. Alvelo, however, did not seek to withdraw his guilty pleas at that time. The other statements Alvelo contends constitute "protestations of innocence" — i.e., his assertion that "there is no way [the victim] saw a gun because neither of us had one" and his assertion that "from [his] understanding, * * * it was a collection * * * not a robbery" — were made during his allocution at the sentencing hearing. Because there was no reason to question Alvelo's guilty pleas at the time they were made and Alvelo never sought to withdraw his guilty pleas prior to sentencing, the trial court had no duty to inquire into Alvelo's reasons for pleading guilty or the facts underlying his guilty pleas in order to accept or "keep" his guilty pleas. *See, e.g., Johnson*, 2016-Ohio-2840, at ¶ 28; *Corbett*, 2013-Ohio-4478, at ¶ 7; *see also Reeves*, 2014-Ohio-3497, at ¶ 13 ("when a defendant makes claims of innocence after a guilty plea has been accepted, a trial court has no duty to inquire into a defendant's reasons for pleading guilty").

**{¶28}** Furthermore, even if the trial court had an obligation to inquire as to the factual basis underlying Alvelo's guilty pleas, the record contains sufficient facts to support the trial court's determination that Alvelo's guilty pleas were made knowingly, intelligently and voluntarily. Under *Alford*, a trial court may accept a guilty plea despite claims of innocence "when a factual basis for the guilty plea is evidenced by the record." *Johnson* at ¶ 27. At the plea hearing, the trial court specifically asked defense counsel, prior to accepting Alvelo's guilty pleas, whether a factual basis existed for his pleas. Defense counsel confirmed that a factual basis existed for the pleas. With respect to the firearm specification, defense counsel further stated, later on in the hearing, that the firearm specification with which Alvelo had been charged was based on complicity, i.e., that the "[v]ictim was clear" that it was Alvelo's accomplice who possessed the firearm.

**{¶29}** At the sentencing hearing, the prosecutor detailed the facts underlying the charges to which Alvelo had pled guilty, including the victim's claims that a .380 caliber handgun had been brandished by Alvelo's accomplice, and introduced still shots of surveillance videos that showed Alvelo and his accomplice entering and leaving the victim's garage at the time of the incident. The victim also addressed the court and described Alvelo's role in the incident. After Alvelo claimed at sentencing that he was "not a robber" and "just a debt collector," the trial court probed his claims. Upon inquiry from the trial court, Alvelo acknowledged that, in his mind, under the circumstances here, he did not "think there is a difference" between "robbing someone" and "collecting a debt."

**{¶30}** Alvelo also contends that his guilty pleas were involuntary because the trial court improperly "advis[ed]" him, after it accepted his guilty pleas, "that he did not have a defense." Alvelo's argument is based on the following exchange at the sentencing hearing:

> THE COURT: So, just out of curiosity, what in your mind is the difference between robbing someone and collecting a debt?
>
> THE DEFENDANT: Well, I don't know. I don't think there is a difference, sir.
>
> THE COURT: Right. Is there anything else you'd like me to know?
>
> THE DEFENDANT: No, sir.

**{¶31}** The trial court did not advise Alvelo that "he did not have a defense." Furthermore, this exchange occurred at the sentencing hearing — several weeks after Alvelo had entered his guilty pleas. As such, it could not have rendered his guilty pleas involuntary. Alvelo's argument is meritless.

**{¶32}** Alvelo concedes that the trial court complied with Crim.R. 11 in accepting his guilty pleas. A defendant's after-the-fact protestations of innocence are insufficient grounds for vacating a plea that was voluntarily, knowingly and intelligently entered. *Reeves*, 2014-Ohio-3497, at ¶ 13. Following a thorough review of the record, we find that, under the totality of the circumstances presented here, Alvelo subjectively understood the consequences of pleading guilty and that his guilty pleas were knowingly, intelligently and voluntarily made. Accordingly, Alvelo's first assignment of error is overruled.

**Denial of Crim.R. 32.1 Motion to Withdraw Guilty Pleas**

**{¶33}** In his second assignment of error, Alvelo argues that the trial court erred in denying his Crim.R. 32.1 postsentence motion to withdraw his guilty pleas. We lack jurisdiction to consider this assignment of error. Alvelo's motion to withdraw his guilty pleas was filed on May 6, 2016, the same day he filed his notice of appeal in this case. This court granted Alvelo's motion for leave to file a delayed appeal on May 12, 2016. Alvelo appealed only from the trial court's December 22, 2015 judgment entry of conviction, not the trial court's subsequent June 28, 2016 order denying his motion to withdraw his guilty pleas. Accordingly, Alvelo's second assignment of error is not properly before this court.

**Errors in Sentencing**

**{¶34}** Although we affirm Alvelo's convictions, we note, sua sponte, that the trial court erred (1) in imposing sentences on the breaking and entering and having weapons while under disability counts in its sentencing journal entry that it did not impose at the sentencing hearing and (2) ordering restitution of $395 in its sentencing journal entry given that it orally imposed $394 in restitution at the sentencing hearing. *See, e.g., State v. Wharton*, 2015-Ohio-5026, 53 N.E.3d 758, ¶ 31-35 (4th Dist.) (where appellate counsel did not assign error to defendant's sentence, court sua sponte reviewed sentence where an obvious defect existed in the trial court's sentence such that the trial court imposed a

sentence that is contrary to law); *see also State v. Vinson*, 8th Dist. Cuyahoga No. 103329, 2016-Ohio-7604, ¶ 66 ("This court may recognize plain error, sua sponte, to prevent a miscarriage of justice.").

{¶35} "A trial court cannot impose a sentence in the sentencing entry that differs from that it imposed at the sentencing hearing." *State v. Vaughn*, 8th Dist. Cuyahoga No. 103330, 2016-Ohio-3320, ¶ 18; *see also State v. West*, 9th Dist. Summit No. 27485, 2015-Ohio-2936, ¶ 49-52 (matter remanded for resentencing where trial court sentenced defendant on drug paraphernalia count in sentencing journal entry after trial court failed to address that count at sentencing hearing); *State v. Jackson*, 1st Dist. Hamilton No. C-140178, 2014-Ohio-5008, ¶ 22 ("a trial court's sentence is contrary to law when it imposes a sentence in the sentencing entry different from the sentence announced at the sentencing hearing"); *State v. King*, 184 Ohio App.3d 226, 2009-Ohio-4551, 920 N.E.2d 399, ¶ 40 (8th Dist.) (trial court committed plain error where it failed to orally pronounce sentence on every count). In addition, Crim.R. 43(A) provides that a defendant "must be physically present at every stage of the criminal proceeding and trial, including * * * the imposition of sentence * * *." There is nothing in the record to suggest that Alvelo waived his right to be physically present for the imposition of sentences on these counts under Crim.R. 43(A)(3).

{¶36} Accordingly, we vacate the sentences imposed on the breaking and entering and having weapons while under disability counts and remand for resentencing

on those counts and for the entry of a nunc pro tunc order to correct the amount of restitution imposed to $394, as stated at the sentencing hearing.

{¶37} Judgment affirmed in part; sentences on breaking and entering and having weapons while under disability counts vacated; case remanded for resentencing on breaking and entering and having weapons while under disability counts and for the entry of a nunc pro tunc order to correct the amount of restitution imposed to $394, as stated at the sentencing hearing.

It is ordered that appellant recover from appellee the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the Cuyahoga County Court of Common Pleas to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


_____
EILEEN A. GALLAGHER, PRESIDING JUDGE

MELODY J. STEWART, J., and
PATRICIA A. BLACKMON, J., CONCUR