[Cite as *State v. Cunningham*, 2023-Ohio-4305.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
ATHENS COUNTY

STATE OF OHIO,                          :

    Plaintiff-Appellee,         : CASE NO. 23CA2

    v.                          :

KENNETH E. CUNNINGHAM, Jr.     : DECISION AND JUDGMENT ENTRY
    AKA BRYAN C. SATTELMYER
                                        :

    Defendant-Appellant.

_____

APPEARANCES:

Christopher J. Pagan, Middletown, Ohio, for appellant[1].

Keller J. Blackburn, Athens County Prosecuting Attorney, and Merry
M. Saunders, Assistant Prosecuting Attorney, Athens, Ohio, for
appellee.
_____
CRIMINAL APPEAL FROM COMMON PLEAS COURT
DATE JOURNALIZED:11-16-23
ABELE, J.

{¶1} This is an appeal from an Athens County Common Pleas
Court judgment of conviction and sentence. Kenneth Cunningham, aka
Bryan Sattelmyer, defendant below and appellant herein, assigns two
errors for review:

    FIRST ASSIGNMENT OF ERROR:

    "SATTELMYER'S ALFORD PLEA WAS UNLAWFUL."

---

    [1] Different counsel represented appellant during the trial
court proceedings.

SECOND ASSIGNMENT OF ERROR:

"SATTELMYER'S REAGAN TOKES SENTENCE WAS
UNLAWFUL."

{¶2}  In January 2020, an Athens County Grand Jury returned a ten-count indictment that charged appellant with (1) two counts of rape in violation of R.C. 2907.02(A)(1)(b), first-degree felonies, (2) four counts of rape in violation of R.C. 2907.02(A)(2), first-degree felonies, (3) one count of gross sexual imposition in violation of R.C. 2907.05(B), a third-degree felony, (4) two counts of gross sexual imposition in violation of R.C. 2907.05(A)(1), fourth-degree felonies, and (5) one count of having weapons while under disability in violation of R.C. 2923.13(A)(2), a third-degree felony.  Appellant pleaded not guilty to all charges.

{¶3}  On September 8, 2020, the state filed a notice of alias that appellant has been known as Bryan Sattelmyer, Kenneth E. Cunningham Jr., Kenneth Cunningham, Kenneth E. Cunningham, Kenneth Cunningham, Jr., Casey Cunningham, Bryan Sattelmyer, Bryan Casey Sattelmyer, and KC Cunningham.  Subsequently, appellant filed a motion to suppress evidence and a motion for a bill of particulars. On October 9, 2020, the state filed a bill of particulars.

{¶4}  On November 19, 2020, the state filed a notice of

violation of bond. The state alleged that appellant instructed his son to contact a family member of one of the minor victims, in violation of the trial court's no-contact order.

{¶5} Appellant also filed a motion for reconsideration of bond and argued that he did not change his name to allow him to commit crimes, but rather "because his stepfather had never legally adopted him, thus, the two names." The supporting memo also alleged that, after arraignment, appellant's mental and physical health "had deteriorated to the point he may not be competent to stand trial," and the jail ignored his complaints.

{¶6} The state's memo contra asserted that Cortney Hottinger, the LPN from the behavioral health center who allegedly had spoken with jail nursing staff, is appellant's friend and "had been speaking to him regularly on recorded jail phone calls. She is also best friends with Amanda Seals-Defendant's fiancé - who is currently under indictment for Intimidation of a Victim and Intimidation of a Witness." The state further alleged that (1) it subpoenaed appellant's medical information from the jail and learned he made no health complaints during his incarceration, (2) appellant's healthcare power of attorney listed Hottinger, and is a conflict of interest if she acted as his nurse, (3) appellant's healthcare power of attorney listed two witnesses (Summer Ward and

Natalie Dorman) who did not appear at the jail to witness appellant's signature, (4) the state's analyst listened to several recorded jail phone calls between appellant and Hottinger, and between appellant and Amanda Seals, and determined that Hottinger, Seals, Ward, and Dorman worked together at Access Ohio, a behavioral health center in Heath, Ohio, and Access Ohio had terminated all four employees for improprieties. It is unclear whether the trial court ruled on the motion for reconsideration of bond.

{¶7} On April 21, 2021, the state amended the indictment to reflect appellant's name as "Kenneth E. Cunningham Jr., AKA Bryan C. Sattelmyer." The trial court also granted appellant's motion for a competency evaluation and ordered the examiner to file a written report within 30 days.

{¶8} On June 29, 2021, appellant's trial counsel filed a motion to withdraw and stated that although appellant had witnesses prepared to testify at trial, "two of those witnesses have now been charged with crimes" and other witnesses "now refuse to [testify] or will not do so." Counsel also stated that he had filed a grievance because the state's actions violated appellant's right to due process. The state responded that a grand jury had returned indictments that charged all four defendants with forgery,

tampering with records, telecommunications fraud, and identity fraud. On July 6, 2021, the trial court appointed another attorney to represent appellant.

{¶9} Subsequently, the state moved to: (1) amend Count One from a violation of R.C. 2907.02(A)(1)(b) to R.C. 2907.02(A)(2) to charge that appellant had sexual conduct by force or threat of force with the victim whose initials are ZA, (2) amend the date range on that count from July 11, 2019 to May 31, 2020, and (3) dismiss the remaining counts of the indictment.

{¶10} On January 6, 2022, appellant entered a guilty plea, pursuant to *North Carolina v. Alford,* 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970), to: (1) Amended Count 1 in violation of R.C. 2907.02(A)(2), a first-degree felony with a prison term of 3 to 11 years and a possible $20,000 fine, and (2) Count 5 in violation of R.C. 2907.02(A)(2), a first-degree felony with a prison term of 3 to 11 years and possible $20,000 fine. The plea agreement included a joint recommendation of an 8-to 12-year prison sentence (with 8 years mandatory) on Count 1, to be served concurrently to the 8 years for Count 5, for a total aggregate sentence of 8 to 12 years in prison. In addition, appellant agreed to Tier III sex offender registration.

{¶11} After the trial court accepted appellant's pleas, the

court: (1) imposed an 8-to 12-year mandatory prison sentence for Count One (eight years mandatory), (2) imposed an 8-to 12-year mandatory prison sentence for Count Five, (3) ordered the counts to be served concurrently, (4) ordered appellant to pay costs, (5) ordered appellant to register as a Tier III sex offender, and (6) ordered a mandatory five-year post-release control term. This appeal followed.[2]

## I.

{¶12} In his first assignment of error, appellant asserts that (1) he failed to enter his *Alford* plea on the record, (2) the trial court failed to adequately explain *Alford* or perform a heightened *Alford* inquiry, and (3) the court failed to determine appellant's competency.

{¶13} Crim.R. 11(A) provides, in pertinent part, that "[a] defendant may plead not guilty, not guilty by reason of insanity, guilty or, with the consent of the court, no contest." A "plea of guilty is a complete admission of the defendant's guilt." Crim.R. 11(B)(1). However, pursuant to *North Carolina v. Alford*, 400 U.S.

---

[2] On December 20, 2022, this court dismissed appellant's initial appeal because the record was unclear whether the trial court dismissed counts two, three, four, six, seven, eight, nine, and ten of the indictment. Thus, the trial court's judgment did not constitute a final appealable order. The trial court's January 10, 2023 entry dismissed the "hanging charges."

ATHENS, 23CA2

25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970), a criminal defendant may believe he or she is innocent of the charges, but reluctantly conclude that the evidence is so incriminating that a significant likelihood exists that a jury would return a guilty verdict. An *Alford* plea "is predicated upon the defendant's desire to obtain a lesser penalty rather than risk the consequences of a jury trial." *State v. Krieg*, 9th Dist. Lorain No. 04CA008442, 2004-Ohio-5174, ¶ 9, citing *State v. Piacella*, 27 Ohio St.2d 92, 271 N.E.2d 852 (1971), syllabus. Therefore, it is a "species" of guilty plea. *State v. Watson*, 6th Dist. Lucas No. L-13-1089, 2014-Ohio-2839, ¶ 16; *State v. Hart,* 7th Dist. Belmont No. 14 BE 0025, 2016-Ohio-1008, ¶ 14.

{¶14} An *Alford* plea is procedurally indistinguishable from a guilty plea in that it severely limits the errors which may be claimed on appeal. *State v. McDay*, 6th Dist. Lucas No. L-96-027, 1997 WL 243584, *2 (May 9, 1997). However, it differs from a guilty plea because, before accepting an *Alford* plea, a court must evaluate the reasonableness of a defendant's decision to plead guilty, notwithstanding the protestation of innocence. *State v. Karsikas*, 11th Dist. Ashtabula No. 2014-A-0065, 2015-Ohio-2595, ¶ 18. This requires a presentation of some basic facts that surround the charge from which a court may determine whether an accused has

made an intelligent and voluntary guilty plea.  *Krieg* at ¶ 14;
*State v. Drzayich,* 2016-Ohio-1398, 62 N.E.3d 850, ¶ 13 (6th Dist.).

{**¶15**} When a defendant contends that a guilty plea is invalid
because a court failed to comply with nonconstitutional
requirements of Crim.R. 11(C)(2)(a) and (b), or the constitutional
requirements of Crim.R. 11(C)(2)(c) or the *Alford* requirements, 400
U.S. 25, 91 S.Ct. 160, (1970), a reviewing court must undertake a
de novo review.  *State v. Hughes*, 4th Dist. Highland No. 20CA2,
2021-Ohio-111, ¶ 6, citing *State v. Cassell,* 2017-Ohio-769, 79
N.E.3d 588, ¶ 30 (4th Dist.).

{**¶16**} The United States Supreme Court held that a court may
accept a guilty plea, notwithstanding a defendant's claim of
innocence, "when * * * a defendant intelligently concludes that his
interests require entry of a guilty plea and the record before the
judge contains strong evidence of actual guilt."  *Alford,* 400 U.S.
at 37.  A court in an *Alford* case has a "heightened duty upon the
trial court to ensure that the defendant's rights are protected and
that entering the plea is a rational decision on the part of the
defendant."  *State v. Carey,* 3d Dist. Union No. 14-10-25, 2011-
Ohio-1998, ¶ 7.

{**¶17**} When a defendant enters an *Alford* plea, "[t]he trial
judge must ascertain that notwithstanding the defendant's

protestations of innocence, he has made a rational calculation that it is in his best interest to accept the plea bargain offered by the prosecutor." *State v. Padgett,* 67 Ohio App.3d 332, 338, 586 N.E.2d 1194 (2d Dist.1990). Further, the standard to determine an *Alford* plea's validity is "whether the plea represents a voluntary and intelligent choice among the alterative courses of action open to the defendant." *Alford*, 400 U.S. at 31. The Supreme Court of Ohio determined that this standard is met:

> Where the record affirmatively discloses that: (1) defendant's guilty plea was not the result of coercion, deception or intimidation; (2) counsel was present at the time of the plea; (3) counsel's advice was competent in light of the circumstances surrounding the indictment; (4) the plea was made with the understanding of the nature of the charges; and, (5) defendant was motivated either by a desire to seek a lesser penalty or a fear of the consequences of a jury trial, or both, the guilty plea has been voluntarily and intelligently made.

*Piacella,* 27 Ohio St.2d 92, 271 N.E.2d 852 (1971), paragraph one of the syllabus.

> Where a defendant enters an *Alford* plea, the trial court must inquire into the factual basis surrounding the charges to determine whether the defendant is making an intelligent and voluntary guilty plea. The trial court may accept the guilty plea only if a factual basis for the guilty plea is evidenced by the record. "When taking an *Alford* plea, the trial court cannot determine whether the accused was making an intelligent and voluntary guilty plea absent some basic facts surrounding the charge, demonstrating that the plea cannot seriously be questioned." "An *Alford* plea may not be accepted when the record fails to demonstrate facts upon which the trial court can resolve the apparent conflict between a defendant's claim of innocence and the

defendant's desire to plead guilty to the charges."
(Citations omitted.)

*State v. Redmond*, 7th Dist. Mahoning No. 17 MA 0068, 2018-Ohio-2778, ¶ 11, quoting *State v. Alvedo*, 2017-Ohio-742, 85 N.E.3d 1032, ¶ 23 (8th Dist.).

**{¶18}** In the case sub judice, appellant first contends that, although he signed a plea agreement to enter an *Alford* plea, he did not, in fact, enter his plea on the record. Instead, appellant alleges he "merely told the court he intended to do that * * * [s]o his convictions were a nullity." We disagree. Here, appellant affirmatively acknowledged his intention to enter a plea and the transcript reveals that the trial court stated: "Keeping all these rights in mind is it your wish to waive these rights and enter an *Alford* Plea of Guilty to counts one and five of the indictment as amended?" Appellant replied, "Yes your honor I do."

**{¶19}** Appellant next argues that the trial court failed to engage in the required heightened *Alford* inquiry. In the case sub judice, at the January 6, 2022 change of plea hearing the state asked the trial court to amend count one of the ten count indictment from a violation of R.C. 2907.02(A)(1)(b) to R.C. 2907.02(A)(2):

which would * * * show that the Defendant has sexual conduct by force or threat of force with the victim whose initials are ZA. And we would also ask the Court to grant the

ATHENS, 23CA2

State's request for amendment of the date range on that particular count to be on or about July 11th of 2019 up to and including May 31 of 2020 as written in the plea agreement. In addition there is a count five. * * * [T]here is no amendment with that particular count. Uh, the Defendant is going to change his plea to guilty. Pursuant to that count and it was that the Defendant engaged in sexual conduct with the victim by compelling her to submit by force or threat of force. Obviously with regard to those two charges uh, the Defendant is entering his plea pursuant to a *North Carolina vs. Alford.* So although he is not admitting his guilt here today. Uh, he is entering or changing his plea to guilty pursuant to that particular case. The State would ask the Court to dismiss the remainder of the counts as indicated. The Defendant has agreed to the amendment on count one and would waive any procedural issues on those, on that amendment. Again, as stated in the plea agreement just to, for purposes of this Court he is changing his plea pursuant to *North Carolina vs. Alford.* There would be a joint recommendation that the Defendant would be sentenced to eight to twelve years on count one as amended. With the eight years being mandatory. And then eight years on count five for a total of aggregate sentence of eight to twelve years in prison. With regard to an F1 Rape charge. It is required that he be subject to Tier III registration, sexual, sexual offender registration and PRC would remain mandatory for five years. HE has served a significant time in jail. 496 days and any time awaiting transport. We would ask this Court to also order. This case has been pending for quite some time as the Court is aware. There were three originally indicted victims in this case. We have lost contact with the victim in regards to the later counts in six, seven, eight and nine despite multiple attempts to contact her. Uh, however, we have been in contact with the other two uh, remaining minor victims and their guardians and their parents and they are in accord with this agreement. Uh, and so I would ask this Court to adopt the plea agreement after going through the Criminal Rule 11 soliloquy and we would like to waive PSI and proceed directly to sentencing today.

COUNSEL: * * * With respect to the joint sentencing

recommendation of eight years my client understands that it is an indeterminate sentencing due to the Reagan Tokes law and that there is a presumption that the minimum sentence would be eight years provided he does not have problems in prison. Just for his clarification and for the Court's as well. We concur with the jail day credit. 496. I have prepared the form for the Tier III sex offender registration. * * * and further we have no objection to the amendments both in the charge as well as the date range with respect to count one.

The trial court then addressed appellant:

TRIAL COURT: So I just want to go over with you uh, it's the same section of the statute in both cases now involving two different alleged victims. Count one is an alleged victim involving ZA and the date range is also being amended from the original indictment on that case. The date range on that plea is now, the allegation is that these, this offense took place sometime between uh, July 11th of 2019 to March 31st of 2020. Uh, with the same alleged victim initials ZA. And the allegation is that during that date range in Athens County * * * that you did engage in sexual conduct with this person by purposely compelling her or submitting by force or threat of force. So my question for you is, just do you understand that charge?

DEFENDANT: Yes your honor I do.

TRIAL COURT: Okay. Very good. And count five is the same allegation, same section of the statute. Also a felony of the first degree. That allegation involves a date range of April 1 of 2020 to April 30 of 2020 and the alleged victim in this case is a person with the initials A.H. And again the allegation is that during that date range, in Athens County, that you purposely compelled her to submit by force or threat of force and that's also a count of rape. A felony of the first degree. You understand that charge?

DEFENDANT: Yes your honor I do.

ATHENS, 23CA2

With respect to the *Alford* plea, the trial court stated:

> TRIAL COURT: Okay.  Now let's talk a little bit about the Alford Plea that's being proposed here today.  So typically in a guilty plea a person is * * * admitting that yes they committed the offense being alleged by the State and that they are * * * admitting that the legal finding of guilt is appropriate.  An Alford Plea works a little differently.  So that would be, what you would be doing, if I were to allow you to move forward on this plea today.  Would be that you are still maintaining your innocence essentially against the actual charge itself but that you are acknowledging that if we had a jury trial in this case or even if it was a bench trial that the State would likely, be able to put forth sufficient evidence to convince either a judge or a jury beyond a reasonable doubt that you would be guilty of that offense.  Do you understand that?
>
> DEFENDANT: Yes your honor I do.
>
> TRIAL JUDGE: And have you had a good chance to talk to your lawyer about what a [sic.] Alford plea means?
>
> DEFENDANT: Yes your honor I did.
>
> TRIAL JUDGE: And did he answer all your questions about that?
>
> DEFENDANT: Yes sir.

{¶20} The trial court also asked general Crim.R. 11 questions about whether appellant was under the influence of drugs or alcohol, if threats had been made against him, if anyone offered anything of value in exchange for his plea, if anyone coerced him, whether his attorney answered all questions, and whether he was satisfied with his legal representation.  As noted above, the trial court then read from the indictment and explained the purpose of

the *Alford* plea.  The trial court then discussed maximum penalties, postrelease control, right to a trial by jury, right to an attorney, and right to confront witnesses.  At that point, the court accepted appellant's plea and proceeded to sentencing.

**{¶21}** The information the trial court had before it to determine whether the record contained "strong evidence of actual guilt," *Alford* at 37, reveals that the arrest warrant affidavit states: "Victim, A.H. * * * reported that on the weekend of April 17, 2020, at the Ohio University Inn, [appellant] started touching her and removing her shirt and bra, shorts and underwear and engaged in oral sex with her."

**{¶22}** The initial indictment as it relates to counts one and five stated:

Count One Rape - F1
R.C. 2907.02(A)(1)(b)

Date of Offense On or about July 10, 2017 to May 31, 2020
On or about the date of the offense set forth above, in the County of Athens, unlawfully did engage in sexual conduct with Z.A. 7/10/2009 who was not the spouse of the offender, whose age at the time of the said sexual conduct was less than thirteen years of age, to wit: 8 years old, whether or not the offender knew the age of Z.A. 7/10/2009.

FURTHERMORE, the victim was less than ten years of age.

* * *

Count Five Rape - F1
R.C. 2907.02(A)(2)

> Date of Offense On or about April 1, 2020 to April 30, 2020
> On or about the date of the offense set forth above, in
> the County of Athens, unlawfully did engage in sexual
> conduct with A.H. 6/15/2006 when [appellant] purposely
> compelled her to submit by force or threat of force.

The Bill of Particulars also added the location of the offense to Count 1 (767 Hudson Ave) and Count 5 (OU Inn) "in the hotel room he was staying in for work."

{¶23} In *Hughes*, *supra,* 2021-Ohio-111, this court recently held that the trial court failed to engage in the required heightened *Alford* inquiry when the trial court (1) did not ask the state to provide the basic facts surrounding the indictment, (2) discovery was not made part of the record, (3) the record contained no bill of particulars upon which the trial court might discern the strength of the state's charges, and (4) the record contained no witness statements or investigative reports. *Id.* at ¶ 12, 15. In fact, in *Hughes* the court asked no questions whatsoever concerning facts that surrounded the indictment.

{¶24} In *State v. Bolin*, 3d Dist. Hardin No. 6-22-02, 2022-Ohio-3777, the court upheld an *Alford* plea when the trial court discussed the Crim.R. 11 requirements and "what an *Alford* plea was," with the defendant, the state presented facts regarding the charges and stated it "had proof to prove the facts alleged beyond

a reasonable doubt," defense counsel stated he received "full discovery from the State of Ohio in which we have been able to review, all of the potential evidence that the State of Ohio would present at a jury trial if we were to go forward," and the trial court inquired of defense counsel whether, in light of the discovery he had received, he believed this guilty plea was in the defendant's best interest and whether it was "supported by a strong factual basis of truth." *Id.* at ¶ 7-8.

{¶25} Similarly, the Twelfth District upheld an *Alford* plea in *State v. Satterwhite*, 12th Dist. Warren No. CA2020-09-063, 2021-Ohio-2878, when the trial court had access to the defendant's interview, the prosecutor read into the record anticipated evidence that would be introduced at trial, and a detective testified concerning how police identified the defendant as the suspect. *Id.* at ¶ 27- 28.

{¶26} Appellant contends that *Hughes* requires reversal. We, however, disagree. In *Hughes,* we concluded that the record did not include a presentation of the basic facts or circumstances surrounding the indictment and the trial court did not ask the state to provide the basic facts surrounding the indictment, but rather immediately proceeded with sentencing. Moreover, the record in *Hughes* contained no bill of particulars, no witness statements

or investigative reports, and no recitation of basic facts to satisfy *Alford.* *Hughes* at ¶ 15. Thus, Hughes' plea did not meet the heightened *Alford* standards because the record was " 'devoid of a basic factual framework against which the trial court could weigh' " appellant's claims of innocence against his willingness to waive trial. *Hughes* at ¶ 15, quoting *State v. Casale*, 34 Ohio App.3d 339, 340, 518 N.E.2d 579 (8th Dist.1986).

{¶27} In contrast, in the case at bar the record includes the initial indictment, which included sufficient detail about the offenses, an arrest warrant affidavit that contained additional details regarding the specific actions that constituted the offenses, and the bill of particulars that added further details, such as the location of each offense. Moreover, the trial court asked appellant if he had the opportunity to speak with his counsel about "what a [sic] *Alford* plea means," to which appellant replied, "yes, your honor I did." The court asked if counsel answered all of appellant's questions, and appellant replied, "Yes sir." Thus, unlike *Hughes,* the case sub judice contains strong evidence of guilt. *See also Krieg*, 9th Dist. Lorain No. 04CA008442, 2004-Ohio-5174, ¶ 16 ("a bill of particulars as requested by defense counsel and answers to discovery" formed a sufficient factual basis for the trial court to accept *Alford* plea); *State v. Remines*, 9th Dist. Lorain No. 97CA006700, 1988 WL 103350, *2 (Feb.25, 1998)(concluding

that the factual basis for an *Alford* plea presented where record included bill of particulars); Katz, Martin, & Macke, *Baldwin's Ohio Practice Criminal Law,* Section 43.15 (3d Ed., Nov.2019)(discussing the factual basis requirement for an *Alford* plea, "Ascertaining that there is a factual basis for the plea does not necessarily require the taking of testimony. Determining a factual basis may be accomplished by * * * deriving information from a pre-sentence report" among other methods).

{¶28} Therefore, we believe that the trial court record affirmatively establishes that appellant's plea was not the result of coercion, deception or intimidation. Here, counsel was present at the time of the plea, counsel's advice was competent, the plea made with the understanding of the nature of the charges, and defendant was motivated either by a desire to seek a lesser penalty or a fear of the consequences of a jury trial, or both. In fact, in the case at bar the state dismissed eight counts and the parties also reached a joint sentencing recommendation. Moreover, at no time did appellant express to the court any reservation whatsoever concerning his plea, his counsel, or the joint sentencing recommendation. Thus, appellant's plea was voluntarily and intelligently made. *Piacella,* 27 Ohio St.2d 92, 271 N.E.2d 852 (1971), paragraph one of the syllabus.

{¶29} Finally, appellant asserts that his plea was not knowing, voluntary, and intelligent because the trial court failed to determine his competency. Appellant filed a motion to determine competency on March 5, 2021 when his first attorney represented him. This filing alleged that appellant informed a health care agency that he had a "history of mental illness, traumatic brain injury, and has medical problems including Parkinson's disease which have affected his ability to communicate." The trial court ordered a competency evaluation.

{¶30} Later, appellant's first trial counsel sought to withdraw and indicated that four defense witnesses "who claimed to be health care surrogates with a power of attorney to counsel and provide mental health advice, medical advice and to advocate for [appellant], * * * were taken into custody and charged with crimes * * * and now await trial." The state's response to counsel's motion to withdraw indicated that the employees of the "health care agency" had been indicted for criminal activity that occurred during the pendency of appellant's case and through their employment with the health care agency. Further, the state explained that appellant "has filed a frivolous motion for competency based on fraudulent information contained in an email from defendants trying to get Defendant 'out on medical.' "

**{¶31}** As appellee points out, at the June 30, 2021 final pretrial conference, the trial court informed the parties it had received the competency evaluation and shared it with counsel, but the court also received a motion from appellant's first trial counsel to withdraw. After the court ascertained appellant's intention to seek a public defender, the court appointed new counsel on July 6, 2021. Appellee points out that new counsel met appellant several times prior to trial and did not renew appellant's initial motion for competency. Further, appellant did not enter his *Alford* plea until six months later, which gave new counsel adequate time to pursue the competency issue.

**{¶32}** In *Dusky v. United States*, 362 U.S. 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960), the United States Supreme Court defined the test for competence to stand trial as whether the defendant " ' has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding - and whether he has a rational as well as factual understanding of the proceedings against him.' " The Ohio Supreme Court has held that a person who " 'lacks the capacity to understand the nature and object of the proceedings against him, to consult with counsel, and to assist in preparing his defense,' " may not stand trial. *State v. Skatzes*, 104 Ohio St.3d 195, 2004-Ohio-6391, 819 N.E.2d 215, ¶ 155.

{¶33} Appellee argues that the case at bar is similar to *State v. Bock*, 28 Ohio St.3d 108, 502 N.E.2d 1016 (1986). In *Bock*, counsel filed a request for a competency hearing, alleged that the defendant had been hospitalized for drug-related problems, and "the record further reveals testimony by Bock of his emotional distress and comments about suicide." The court, however, concluded that this alone "is not sufficient to indicate a lack of competency." *Bock* at 110. More specifically, the court explained:

> Defense counsel, after the original motion for a hearing, failed ever again to mention the defendant's competency until the time for appeal. The record reveals no adequate indication of any behavior on the part of the defendant which might indicate incompetency. Nor is there any expert or lay opinion in the record that defendant was actually incompetent.

*Bock* at 111.

{¶34} We similarly conclude that in the case at bar, after appellant's first trial counsel requested a competency evaluation and the trial court granted the motion, the issue of appellant's competency faded into the background of these proceedings. We further point out that neither appellant or his counsel raised this issue or engaged in conduct that could cause the court to question or have any concern about appellant's competency. This, coupled with the fact that the initial motion relied on statements made by staff persons later indicted for forgery, tampering with records,

telecommunications fraud and identity fraud, leads us to conclude that the trial court's failure to hold a competency hearing constitutes, at most, harmless error. *Bock*, syllabus paragraph one.

{¶35} In *State v. Were*, 94 Ohio St.3d 173, 2002-Ohio-481, 761 N.E.2d 591, the Supreme Court of Ohio concluded that a defendant is entitled to a pretrial competency hearing and the failure to hold that hearing is error and requires reversal. However, *Were* is distinguishable from the case at bar because in *Were,* counsel "repeatedly requested" a competency hearing. The court noted that, although the trial court ordered a competency evaluation, the requested hearing was not held or waived, but rather the trial court issued an entry that determined competency without a hearing. *Id.* at 174. Counsel raised the issue of Were's competency on numerous occasions - through a motion before trial, after opening arguments, during trial, and before mitigation. Were also refused to speak with his defense team and filed numerous pro se motions to dismiss his attorneys in which he accused them of threatening his life and conspiring with the state. Moreover, Were's signs of paranoia, and his refusal to cooperate, led his attorneys to file two motions to withdraw as counsel. *Were* at 176. Thus, the *Were* court found the record "replete with suggestions of [the defendant's] incompetency." *Id.* at 175. Therefore, the trial

court's failure to hold a competency hearing was not harmless. *Id.* at 177, 761 N.E.2d 591.

{¶36} "The right to a hearing on the issue of competency rises to the level of a constitutional guarantee where the record contains 'sufficient indicia of incompetence,' such that an inquiry into the defendant's competency is necessary to ensure the defendant's right to a fair trial." *State v. Berry*, 72 Ohio St.3d 354, 359, 650 N.E.2d 433, 438 (1995), quoting *Drope v. Missouri*, 420 U.S. 162, 175, 95 S.Ct. 896, 905, 43 L.Ed.2d 103, 115. Thus, the *Were* court held that "[a]n evidentiary competency hearing is constitutionally required whenever there are sufficient indicia of incompetency to call into doubt defendant's competency to stand trial." *Were*, 94 Ohio St.3d 173, 175, citing *Berry*, 72 Ohio St.3d 354, 650 N.E.2d 433. But see *State v. Flanagan*, 2017-Ohio-955, 86 N.E.3d 681 (8th Dist.)(reversal required when competency raised prior to trial, court failed to hold hearing, record reflects no formal finding or adoption of competency, no stipulation to competency or results of evaluation); *State v. Dowdy*, 8th Dist. Cuyahoga No. 96642, 2012-Ohio-2382 (because psychiatric evaluation not made part of record and not stipulated, court unable to glean sufficient information to determine court's failure to conduct the hearing is harmless).

**{¶37}** The Supreme Court of Ohio recently reaffirmed the *Bock* standard and noted that, whether a trial court's failure to hold a competency hearing constitutes reversible error is to be determined on a case-by-case basis. *State v. Hough*, 169 Ohio St.3d 769, 2022-Ohio-4436, 207 N.E.3d 788, citing *Bock*, 28 Ohio St.3d at 109-110, 502 N.E.2d 1016. The *Hough* court reversed the convictions and pointed to (1) few interactions with the trial court, (2) a discounting of the defendant's mental health diagnoses, (3) the defendant not oriented to time and held several delusional beliefs, such as the belief that others could control his thoughts or force thoughts into his head and that people were trying to follow him and cause him problems,(4) defendant suffered auditory hallucinations, (5) that cognitive tests revealed a low IQ, and low verbal concept formation and verbal and nonverbal reasoning, and (6) counsel raised concerns about Hough's competency at sentencing. *Id.* at ¶ 32-35.

**{¶38}** In *State v. Jones*, 4th Dist. Gallia No. 19CA9, 2020-Ohio-7037, the defendant filed a pretrial motion to determine competency that the trial court denied without a hearing. After the defendant pleaded guilty to murder, he later requested to withdraw his plea and alleged he lacked competency to plead guilty. The trial court denied the motion and we affirmed. In *Jones*, we noted that we have

recognized some factors that would require a court to sua sponte order a competency evaluation including "(1) doubts expressed by counsel as to the defendant's competence, (2) evidence of irrational behavior, (3) the defendant's demeanor at trial, and (4) prior medical opinion relating to competence to stand trial." *Id.* at ¶ 20, citing *State v. Barnhart*, 4th Dist. Washington No. 96CA32, 1997 WL 600045, at *2 (Sept. 24, 1997). We summarized the interplay between *Bock* and *Were*:

> Together *Bock* and *Were* effectively instruct that if a pretrial request for a competency hearing is made, it is mandatory for a trial court to hold a competency hearing consistent with R.C. 2945.37. But, if a court fails to hold a competency hearing pursuant to a pretrial request and the record is replete with indicia of incompetency, it is a reversible error under *Were.* Alternatively, if the record does not reveal indicia of incompetency, then the failure to hold a hearing is harmless error under *Bock.*

*Jones* at ¶ 25. We concluded that counsel's actions were not those of an attorney who believed his client incompetent, *see Bock* at 111 (counsel's failure to continue to pursue competency evaluation is indicia that Appellant is not incompetent); see also *State v. Moore*, 8th Dist. Cuyahoga No. 2020-Ohio-3459, ¶ 35 (competency hearing required only when issue raised and maintained.) Moreover, we pointed out, as in the case at bar, that the trial court engaged in a lengthy colloquy with Jones during the plea hearing and the record did not indicate that appellant acted "irrationally" or his

"demeanor" unusual, factors we have recognized as possible competency concerns. *Id.* at ¶ 29, citing *Barnhart,* 4th Dist. Washington No. 96CA32, 1997 WL 600045, at *2.

**{¶39}** Therefore, because the record does not reveal any indicia of incompetency, we conclude that the trial court's failure to hold a hearing was harmless error. Furthermore, appellant's plea represented a voluntary and intelligent choice among the alternative courses of action open to the defendant, *Alford,* 400 U.S. at 43. Accordingly, based upon the foregoing reasons, we overrule appellant's first assignment of error.

II.

**{¶40}** In his second assignment of error, appellant asserts that the trial court failed to notify him at the hearing of his Reagan Tokes Act R.C. 2929.19(B)(2)(c) requirements. In *State v. Bontrager*, 2022-Ohio-1367, 188 N.E.3d 607 (4th Dist.), we concluded that the Reagan Tokes Law does not violate due process. *Id.* at ¶ 48. However, appellant contends that the trial court failed to inform him of the mandatory R.C. 2929.19(B)(2)(c) notifications. The state concedes this point and requests this court remand the case to the trial court for resentencing. We agree. *See State v.*

*Massie*, 2d Dist. Clark No. 2020-CA-50, 2021-Ohio-3376 (when considering language in sections R.C. 2929.19(B)(2)(a) and (B)(2)(b) together, it becomes clear that the phrase "notify the offender" in (B)(2)(a) necessarily refers to notice that should be given at the sentencing hearing, since section (B)(2)(b) instructs the trial court to include the same information in the sentencing entry.); *State v. Hodgkins*, 12th Dist. Warren No. CA2020-08-048, 2021-Ohio-1353 (trial court failed to inform appellant of mandatory notifications set forth in R.C. 2929.19(B)(2)(c) at the sentencing hearing, thus, failed to comply with the statute, and resentencing required).

{¶41} Accordingly, based on the foregoing reasons, we sustain appellant's second assignment of error and remand the case to the trial court for the limited purpose of resentencing.

III.

{¶42} For the foregoing reasons, we overrule appellant's first assignment of error and sustain appellant's second assignment of error. Consequently, we affirm the trial court's judgment in part, reverse it in part, and remand the matter for further proceedings consistent with this opinion.

JUDGMENT AFFIRMED IN PART, REVERSED
IN PART, AND CAUSE REMANDED FOR
FURTHER PROCEEDINGS.

JUDGMENT ENTRY


It is ordered that the judgment be affirmed in part, reversed in part and cause remanded for further proceedings consistent with this opinion. Appellee shall pay the costs herein taxed.


The Court finds there were reasonable grounds for this appeal.


It is ordered that a special mandate issue out of this Court directing the Athens County Common Pleas Court to carry this judgment into execution.


A certified copy of this entry shall constitute that mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Smith, P.J. & Hess, J.: Concur in Judgment & Opinion

For the Court


BY:_____
                              Peter B. Abele, Judge




NOTICE TO COUNSEL

Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.